Filed 4/6/16  P. v. Williams CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B261047 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA063317) |
| v. | |
| SHAUN GREGORY WILLIAMS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge.  Affirmed in part; reversed and remanded in part.

Lisa M. Sciandra, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Eric J. Kohm, Deputy Attorney General, for Plaintiff and Respondent.

# I. INTRODUCTION

A jury convicted defendant, Shaun Gregory Williams, of second degree burglary (Pen. Code, § 459)[1] and misdemeanor methamphetamine possession. (Health & Saf. Code, § 11377, subd. (a).) Defendant was sentenced to three years, eight months in state prison. We affirm the judgment. We direct the superior court clerk to amend the abstract of judgment with respect to penalties and surcharges.

# II. THE EVIDENCE

On June 16, 2014, three sheriff's deputies responded to a burglary call. They found defendant standing inside a small shed on private residential property. The shed was cluttered and disheveled. Boxes, bags, dirt and debris covered the floor. There was dust on all the surfaces. There was a movable workbench in the center of the shed. Shelving around the walls contained power tools. Defendant had cleared a small portion of the floor. The space was about two feet wide and three to four feet long. Defendant told the deputies he was homeless and unemployed and had been sleeping in the shed for three nights. However, none of the deputies saw anything suggesting a person had been sleeping in the shed.

When the deputies discovered defendant, he was wearing black gloves and holding a dremel tool in his hands. A backpack was at defendant's feet. Defendant admitted he owned the backpack. The backpack contained a number of dust-covered tools: a drill bit in an unopened package; a wolfecat tool kit; a drill bit gauge; a screwdriver; a folding knife; and a hex tool. The backpack also contained two cans of spray paint, miscellaneous United States currency and a baggy filled with 2.5286 grams of methamphetamine. Defendant had a glass pipe in his pocket. The tube and bulb areas of the pipe contained 0.5801 grams of methamphetamine. The methamphetamine found in

---

[1]     Further statutory references are to the Penal Code except where otherwise noted.

the backpack and in the pipe were usable amounts.  Deputy Elizabeth Schneider testified drug users sometimes support their habits through theft and narcotics sales.

The homeowner, James Roberts, had been away for three days.  Upon his return, he found the shed had been ransacked.  The tools discovered in defendant's backpack had been taken from Mr. Roberts's shed.

## III.  DISCUSSION

### A.  Sufficiency of the Evidence

Defendant asserts there was insufficient evidence he committed a burglary. Defendant contends there was no evidence he formed the specific intent to commit theft or another felony *before* he entered the shed.  Specifically, defendant argues the evidence instead supported his claim he entered the shed with the intent to sleep.  In support of his position, defendant cites facts and inferences favorable to him.

Burglary requires entry with a specific intent.  (§ 459; *People v. Tafoya* (2007) 42 Cal.4th 147, 170-171; *People v. Montoya* (1994) 7 Cal.4th 1027, 1041-1042.)  Pursuant to section 459, "Every person who enters any . . . building . . . with intent to commit grand or petit larceny or any felony is guilty of burglary."  Our Supreme Court has held, "The crime of burglary consists of an act—unlawful entry—accompanied by the 'intent to commit grand or petit larceny or any felony.'  (§ 459.)" (*People v. Montoya, supra,* 7 Cal.4th at p. 1041; accord, *People v. Tafoya, supra,* 42 Cal.4th at pp. 170-171.)  Further, "[T]he gist of the offense is *entry* with the proscribed intent, and . . . such an entry constitutes the completed crime of burglary . . . ."  (*People v. Allen* (1999) 21 Cal.4th 846, 863, fn. 18; accord, *People v. Holt* (1997) 15 Cal.4th 619, 669 ["The People must establish that a burglary defendant entered the premises with the intent to commit a felony or theft"].)  Whether defendant had the requisite intent when he entered the shed was a question for the trier of fact.  (*People v. Moore* (2011) 51 Cal.4th 386, 407-408; *People v. Matson* (1974) 13 Cal.3d 35, 41; *People v. Soto* (1879) 53 Cal. 415, 416.)  A

3

defendant's intent may be inferred from all of the facts and circumstances. (*People v. Holt, supra,* 15 Cal.4th at pp. 669-670; *People v. Cain* (1995) 10 Cal.4th 1, 47.)

We apply the well-established sufficiency of the evidence standard of review: "In evaluating defendant's claim, 'we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]" [Citation.] A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'" the jury's verdict. [Citation.]' (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*), italics omitted.) [¶] Regarding a specific intent element of a crime, we have explained that '[e]vidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction.' (*People v. Bloom* (1989) 48 Cal.3d 1194, 1208.) Moreover, the standard of review that applies to insufficient evidence claims involving circumstantial evidence is the same as the standard of review that applies to claims involving direct evidence. 'We "must accept logical inferences that the jury might have drawn from the circumstantial evidence. [Citation.]" [Citation.] "Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's

4

guilt beyond a reasonable doubt. [Citation.]" [Citation.] Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal. [Citation.]' (*Zamudio, supra,* 43 Cal.4th at pp. 357-358, 75 Cal.Rptr.3d 289, 181 P.3d 105.)" (*People v. Manibusan* (2013) 58 Cal.4th 40, 87; accord, *People v. Banks* (2015) 61 Cal.4th 788, 804.)

Defendant was homeless and unemployed. He was a methamphetamine user. He had a glass pipe in his pocket with methamphetamine in the bulb and tube. Defendant entered the shed without Mr. Roberts's permission and ransacked it. Defendant, who was wearing gloves, took items from the shed and put them in his backpack. All of the items belonged to Mr. Roberts. Three deputies saw no sign defendant had been sleeping in the shed as he claimed. This was substantial evidence defendant committed a burglary. The jury could reasonably conclude defendant, who had no source of income, entered the shed with the intent to steal items he could then sell to support his illegal drug use.

### B. Penalty Assessments

#### 1. The fees and fines imposed and the issues

The trial court imposed a $50 criminal laboratory analysis fee (Health & Saf. Code, § 11372.5, subd. (a)) and a $10 local crime prevention programs fine (§ 1202.5, subd. (a)) "plus penalty assessment[s]." The trial court also imposed a $150 drug program fee (Health & Saf. Code, § 11372.7, subd. (a)), but did not orally impose any penalties as to that fee. The abstract of judgment states under "Other orders," "Pay $174 penalty assessments[.]" We asked the parties to brief the question whether the penalty assessments were correctly calculated. We find they were not. Defendant was subject to penalty assessments as discussed below.

5

## 2. The criminal laboratory analysis fee

The $50 criminal laboratory analysis fee was subject to $155 in penalty assessments, specifically: a $50 state penalty (§ 1464, subd. (a)(1)); a $35 county penalty (Gov. Code, § 76000, subd. (a)(1)); a $10 state surcharge (§ 1465.7, subd. (a)); a $25 state court construction penalty (Gov. Code, § 70372, subd. (a)(1)); a $5 deoxyribonucleic acid penalty (Gov. Code, § 76104.6, subd. (a)(1)); a $20 state-only deoxyribonucleic acid penalty (Gov. Code, § 76104.7, subd. (a)); and a $10 emergency medical services penalty (Gov. Code, § 76000.5, subd. (a)(1)).

With respect to the county penalty, defendant argues: "In Los Angeles County, where [defendant] was convicted, the $7 penalty pursuant to Government Code section 76000, subd[ivision] (a)(1), has been reduced to $5 under subdivision (e) of the same statute." The Attorney General agrees stating, "[T]he Government Code section 76000, subdivision (a)(1) penalty is $5 for every $10." We disagree. As we explained in *People v. McCoy* (2007) 156 Cal.App.4th 1246, 1253-1254: $7 for every $10 is assessed; $2 is allocated for courthouse construction; and $5 is a county penalty allocated for purposes other than courthouse construction.

## 3. The drug program fee

The $150 drug program fee (Health & Saf. Code, § 11372.7, subd. (a)) was subject to $465 in penalty assessments as follows: a $150 state penalty (§ 1464, subd. (a)(1)); a $105 county penalty (Gov. Code, § 76000, subd. (a)(1)); a $30 state surcharge (§ 1465.7, subd. (a)); a $75 state court construction penalty (Gov. Code, § 70372, subd. (a)(1)); a $15 deoxyribonucleic acid penalty (Gov. Code, § 76104.6, subd. (a)(1)); a $60 state-only deoxyribonucleic acid penalty (Gov. Code, § 76104.7, subd. (a)); and a $30 emergency medical services penalty (Gov. Code, § 76000.5, subd. (a)(1)). However, Health and Safety Code section 11372.7 includes an ability to pay provision. (§ 11372.7, subd. (b).) We presume the trial court found defendant had the ability to pay the $150 drug program

6

fee. But the total amount due under Health and Safety Code section 11372.7 is $615. Defendant said he was homeless and unemployed at the time of his arrest. There is no substantial evidence defendant has the ability to pay the drug program fee together with the applicable penalty assessments in light of his total financial obligations. We will reverse the drug program fee and direct the trial court, upon remittitur issuance, to hold a hearing concerning defendant's ability to pay. (*People v. Corrales* (2013) 213 Cal.App.4th 696, 702; cf. *People v. Castellanos* (2009) 175 Cal.App.4th 1524, 1532 [local crime prevention programs fine].)

### 4. The local crime prevention programs fine

The $10 local crime prevention programs fine was subject to $31 in penalty assessments as follows: a $10 state penalty (§ 1464, subd. (a)(1)); a $7 county penalty (Gov. Code, § 76000, subd. (a)(1)); a $2 state surcharge (§ 1465.7, subd. (a)); a $5 state court construction penalty (Gov. Code, § 70372, subd. (a)(1)); a $1 deoxyribonucleic acid penalty (Gov. Code, § 76104.6, subd. (a)(1)); a $4 state-only deoxyribonucleic acid penalty (Gov. Code, § 76104.7, subd. (a)); and a $2 emergency medical services penalty (Gov. Code, § 76000.5, subd. (a)(1)).

### C. The Abstract of Judgment

The penalty assessments are incorrectly reflected in the abstract of judgment. The abstract of judgment must be corrected to reflect the penalty assessments as set forth above. (*People v. Johnson* (2015) 234 Cal.App.4th 1432, 1459; *People v. Hamed* (2013) 221 Cal.App.4th 928, 940, 941-942.)

## IV.  DISPOSITION

The judgment is reversed with respect to the Health and Safety Code section 11372.7, subdivision (a) drug program fee.  Upon remittitur issuance, the trial court is to hold a hearing concerning defendant's ability to pay the drug program fee together with applicable penalty assessments in light of his total financial obligation.  The judgment is affirmed in all other respects.  The clerk of the superior court is to amend the abstract of judgment to correctly reflect the fines, fees, penalties and surcharges imposed and deliver a copy of the amended abstract to the Department of Corrections and Rehabilitation.

                    NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


                    TURNER, P.J.

I concur:


        KUMAR, J.*

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8

People v. Shaun Gregory Williams
B261047

BAKER, J., Concurring


I agree the majority opinion correctly decides the issues presented for our consideration.  I write separately, however, with a point concerning the applicable standard of review.

The majority cites *People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*) as the source of authority for its articulation of "the well-established sufficiency of the evidence standard of review."  I of course have no quarrel with the case citation; there are many other cases that use language similar to that quoted by the majority.  But I do find some tension in the description of the review we must undertake under the "substantial evidence" standard.

On the one hand, the majority quotes language that reads as if it precludes a reviewing court from undertaking under any circumstances an assessment of the credibility of witness testimony:  "'"[I]t is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts . . . ."'"  (*Ante*, at p. 4, quoting *Zamudio*, *supra*, 43 Cal.4th at p. 357.)  On the other hand, the same quoted language recounts the venerable formulation of what a reviewing court must do to determine whether evidence is "substantial," namely, assess whether the evidence "is reasonable, *credible*, and of solid value."  (*Ante*, at p. 4, quoting *ibid.* (emphasis added); see also *Estate of Teed* (1952) 112 Cal.App.2d 638, 644.)

There are good reasons why a reviewing court should almost always give strong deference to a finder of fact's credibility determinations; a fact-finder, for instance, has the opportunity to observe a witness's demeanor while testifying whereas we do not.  (See, e.g., *In re Champion* (2014) 58 Cal.4th 965, 980 ["Because the referee had an opportunity to observe the demeanor of [the witnesses] when they testified, we give

1

'great weight' to his determination that their testimony lacked credibility"].)  But if we must evaluate the credibility of evidence—and witness testimony is evidence—further exploration of the circumstances in which a court may consider credibility issues may be warranted in an appropriate case.  This, however, is not that case, and the evidence was sufficient for the reasons stated by the majority opinion.


BAKER, J.

2