Filed 3/10/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B252684 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA059058) |
| v. | |
| MYLYN C. JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Bernie La Forteza, Judge. Affirmed in part, reversed in part, and remanded.

Victoria H. Stafford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

This case concerns the proper interpretation of Penal Code section 647, subdivision (j)(2),[1] which, in brief, criminalizes the act of secretly filming or photographing an "identifiable person" under or through that person's clothing so as to view the person's body or undergarments, for sexual gratification, under circumstances in which the person has a reasonable expectation of privacy. Defendant Mylyn Johnson was charged with 12 counts of violating section 647, subdivision (j)(2). The jury was shown video footage defendant had recorded in which he followed women and filmed under their skirts, without their knowledge. In some cases, the resulting footage did not capture the women's faces, or their profiles. During closing arguments, the prosecution and defense advanced two competing definitions of "identifiable person." The jury found defendant guilty on all counts under section 647, subdivision (j)(2).

On appeal, defendant contends: (1) the convictions on five of the counts must be reversed because there was no evidence he filmed "identifiable" persons, in that the women could not possibly be identified from the video footage; (2) the trial court erred in failing to sua sponte define "identifiable person" for the jury; and (3) defense counsel rendered ineffective assistance of counsel in failing to object to the prosecutor's definition of "identifiable person." We conclude that to establish the defendant has filmed an "identifiable person," the prosecutor must prove that when all of the evidence is considered, it is reasonably probable someone could identify or recognize the victim; this may include the victim herself or himself. Although we conclude there was sufficient evidence adduced in this case to satisfy this standard on each of the challenged counts, we reverse the judgment as to the five challenged counts due to prejudicial instructional error.

---

[1] All further section references are to the Penal Code unless otherwise specified.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2013, Andrea M. and her sister, Raquel M., were shopping at a Target store in Lancaster. Andrea noticed defendant was following them. He was holding a black phone. At one point, defendant kneeled down and pretended to get something, then aimed the phone under Andrea's skirt. Andrea was surprised. She thought the incident was "creepy" and, with Raquel, reported it to a Target employee. A Target security employee began observing defendant through store surveillance cameras. As the security employee watched, defendant followed a woman in the store. At strategic moments, he bent down and used his phone to film under her dress. The security employee called police, then followed defendant when he left the store.

A Los Angeles County deputy sheriff eventually arrived and stopped defendant. Defendant was holding a phone in one hand and a tablet computer in the other. He admitted he had been in Target, and, when asked, admitted he had taken pictures up women's skirts. He conceded he did not have permission to take such pictures. Defendant was arrested. When Andrea and Raquel M. approached the deputy's patrol car for a field identification, defendant said to the deputy, "Can you tell them I'm sorry?" After receiving *Miranda* warnings, defendant told the deputy he had only photographed one woman and that this was the first time he had ever done so. However, a search of his phone revealed well over 100 "up-skirt" videos and pictures. The women in the videos appeared to be unaware they were being recorded.

One of the many videos depicted Francisca M. In February 2013, she stopped at a Wal-Mart in Lancaster to buy a cell phone charger. She asked a man she thought worked at the store—defendant—for help. Unbeknownst to her, defendant had been following her in the store before she spoke to him. As defendant helped Francisca, he surreptitiously videotaped under her skirt. After Francisca bought the charger, defendant followed her to her car and asked if she had found what she was looking for. The license plate of her car was captured in the recorded footage, which enabled law enforcement to identify and contact her.

3

A detective from the Sheriff's Department reviewed videos from defendant's phone and the hard drive of a laptop seized from his home. There were over 2,000 videos, including "sex videos" of defendant with various women, and up-skirt videos. Although there were other non-sex-related videos, the overwhelming majority of the videos involved "sexual-related" content. The number of videos in which defendant followed a person but was unable to get an "up-skirt" shot exceeded the number of videos in which he was successful. The videos were recorded at various public places, such as Metrolink stations, Grauman's Chinese Theater in Hollywood, the Hollywood Walk of Fame, or stores such as the Salvation Army in Lancaster and Starbucks. In general, defendant stalked his victims for several minutes, until he was able to get close enough to aim his phone "under the person's skirt or near their buttock region."

The jury viewed a number of videos associated with the 12 counts charged under section 647, subdivision (j)(2). With the exception of the videos of Andrea and Raquel M. and Francisca M., the victims were identified only as Jane Does; law enforcement had not determined their identities. In some of the videos defendant recorded the victim's face. But in the videos associated with counts 8, 9, 11, 14, and 15, the victim's face was not visible in the recording. Instead, only shoes, legs, skirts or dresses, purses, and in a few cases, the woman's back and the back of her head, appeared on screen.

The trial court instructed the jury on the elements of a section 647, subdivision (j)(2) violation, including as follows: "[T]he People must prove that . . . [t]he defendant willfully used a concealed camcorder, motion picture camera, or photographic camera of any type to secretly videotape, film, photograph, or record by electronic means another, identifiable person under or through the clothes being worn by that other person. . . ." In his closing argument, the prosecutor discussed the "identifiable person" requirement:

> "What does 'an identifiable person' mean? It simply means a person that exists, someone you can identify as a person, as opposed to a doll or something like that. It's an identifiable person. And that makes sense. . . . [I]f that wasn't the case, then we would – could reward people for targeting strangers as victims or for making their victims unidentifiable when they are finished with the crime, and that wouldn't make sense. So an identifiable person just means a human being."

4

In the defense closing argument, defense counsel asserted the prosecutor's definition was incorrect:

> "[I]t's true that that word ['identifiable'] is not specifically defined in your instructions. So I would encourage you to ask a question about that word. But what it really means, in the context of this law, is that it is a specifically identifiable human being; in other words, what's on the video allows you to tell who that person is. Now, I'm not saying that you actually have to be able to figure it out, but there needs to be something on that video which makes that person subject to identification. Obviously, the most easy way is if there's a face. We've seen that there's other ways. . . . Maybe there's a license plate in another video. But on counts 8, 11, 14, and 15, there is nothing. There is nothing in those videos that would ever allow you to identify that woman. There is nothing – you don't see her face, and there's nothing else. So he has one interpretation, I have another. Ultimately, as the judge has instructed you, it is the court that answers any questions about the law. So when you see eventually that 'identifiable' means it's actually – you can tell if it's a specific person or not, you will see that counts 8, 11, 14, and 15 have not been proven and Mr. Johnson is entitled to a verdict of not guilty."

In rebuttal, the prosecutor urged the jury to reject defense counsel's interpretation:

> "Basically, he's saying if you can't actually identify the victim, then we can't reach a guilty verdict. That is completely wrong, because, then, let's think about what that would mean. That would mean that anybody who wants to go and take videos up underneath women's skirts, all you got to do is just make sure you never get their face or you never get any of their license plates or anything identifiable, and you're okay, you're not committing a crime. That would be ludicrous. Of course, 'identifiable' means – and you can use your common sense. . . . You don't need to ask the judge what 'identifiable' means, because you're not going to get an answer. You're going to get 'refer to the jury instruction.' You don't need to ask that question. You just need to use your common sense. . . . Common sense: 'identifiable,' somebody that's a human being, somebody we can identify as a person, we can identify as a victim. We see her sitting on the train, we know she's there, we know she's a victim. That's what 'identifiable' means, and it's common sense."

The jury returned guilty verdicts on all of the charges under section 647, subdivision (j)(2). The jury also found defendant guilty of one count of sexual battery by fraud (§ 243.4, subd. (c)), and one count of felony false imprisonment (§ 236).[2] Defendant filed a motion for new trial as to counts 8, 11, and 14. Defense counsel contended the statute requires that the victims be identifiable as specific individuals, and the videos supporting those three counts did not "depict victims subject to individual identification." Counsel attached the legislative history of section 647, subdivision (j)(2), in support of the motion. The motion was denied.

The trial court separately found true allegations that defendant had suffered one prior strike and had served a prior prison term within the meaning of section 667.5, subdivision (b). The court sentenced defendant to a total prison term of 20 years and 6 months.

## DISCUSSION

### I. Substantial Evidence Supported the Convictions on Counts 8, 9, 11, 14 and 15

Defendant contends the convictions on counts 8, 9, 11, 14 and 15 must be reversed for insufficient evidence.[3] He argues the videos at issue in those counts do not contain any identifying characteristics of the victims, thus there was no evidence that he filmed "identifiable persons" as required by the statute. The heart of the argument concerns the

---

[2] The sexual battery and false imprisonment charges arose out of an incident in which defendant observed and recorded a woman in a K-mart store. As defendant was watching and filming, the woman placed an item in her back pocket. Defendant approached her and asked if she was stealing. Then, acting as if he was a loss prevention officer, defendant asked the woman to lift up her shirt. He reached into the back of her pants and pulled at her underwear; he repeatedly directed her to squat, which caused her buttocks to be partially visible; and he told her to "spread [her] cheeks."

[3] In his opening brief on appeal, defendant challenged the convictions on counts 6, 8, 9, 10, 11, 13, 14, and 15. His argument was based in part on the contention that the only evidence supporting these counts was single frame "under-skirt" images that were printed and used as exhibits. In the respondent's brief, the People pointed out that the jury had also received for consideration defendant's video footage. Thus, in his reply brief, defendant narrowed his appeal to counts 8, 9, 11, 14, and 15. He has conceded the victims in the other counts were identifiable or identified at trial.

meaning of the statutory requirement that the defendant film an "identifiable person." Although we review a jury's findings of guilt for substantial evidence, statutory interpretation is a question of law we review de novo. (*People v. Spriggs* (2014) 224 Cal.App.4th 150, 154.)

### A. Overview

Under section 647, subdivision (j)(2), a person engages in the misdemeanor offense of disorderly conduct when he or she "uses a concealed camcorder, motion picture camera, or photographic camera of any type, to secretly videotape, film, photograph, or record by electronic means, another, identifiable person under or through the clothing being worn by that other person, for the purpose of viewing the body of, or the undergarments worn by, that other person, without the consent or knowledge of that other person, with the intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of that person and invade the privacy of that other person, under circumstances in which the other person has a reasonable expectation of privacy."

As explained above, in the trial court the parties advanced competing definitions of "identifiable person." The prosecutor argued the phrase meant simply that the evidence had to show the defendant recorded a human being, rather a non-human figure, such a doll. Defense counsel argued the phrase meant the recorded picture or footage had to depict a specific person who could be identified in some way, or "what's on the video allows you to tell who that person is," even though counsel added: "Now, I'm not saying that you actually have to be able to figure it out, but there needs to be something on that video which makes that person subject to identification." In the motion for new trial, defendant contended "identifiable person" meant the videos had to "allow for the person filmed to be identified," or that the women filmed had to be "capable of being identified as specific individuals."

On appeal, defendant similarly contends a defendant can only be found guilty under section 647, subdivision (j)(2) if he or she films a "person in such a way that it is possible to determine her identity, such as by depicting her face or other identifying characteristics, whether or not her identity is ultimately established." The People now

7

contend "identifiable person" means "distinguishable," in that the recorded image must show a victim "who can be distinguished from other persons." Both sides agree the language of the statute is not clear, but they disagree as to the import of the legislative history. Both sides also focus their discussions on "identifiability" *from* the recorded image itself. However, neither defendant nor the People argue the victim's identity must ultimately be established. In other words, neither side contends the People must bring the victim into court or offer evidence establishing the victim's name.

As discussed in greater detail below, our review of the language of the statute, the legislative history, and the apparent legislative purpose indicates that the Legislature was primarily concerned with the invasion of privacy that occurs when one person secretly photographs or films under or through the clothing of another person. Yet, it also appears that the Legislature did not intend to allow criminal prosecution for such acts when it would be impossible for anyone to ever identify, recognize, or otherwise discern who the victim was.

We therefore conclude the following. First, that the defendant must film an "identifiable person" to face criminal liability under section 647, subdivision (j)(2), does not mean the victim's identity must ultimately be established. The People do not have to prove up the victim's identity. The People do not have to prove the victim has actually been identified, located, or named. The People do not have to offer evidence showing anyone has actually recognized the victim.

Second, "identifiable" means capable of identification, or capable of being recognized. In other words, is there enough evidence about the victim that it is reasonably probable someone could identify or recognize the victim? We reject the People's argument that "identifiable" means only that it is possible to distinguish one victim from another.

Third, "identifiable" means that when all of the available evidence is considered, it is reasonably probable that *someone* could identify or recognize the victim. This includes the victim herself or himself. The People will prove the "identifiable person" element by

8

establishing that, when all of the evidence is considered, it is reasonably probable that someone, including the victim, could identify or recognize the person secretly recorded.

Fourth, the statute does not require that the victim be identifiable solely from the defendant's photographs or videos. Whether the defendant has recorded an "identifiable person" must be determined from all of the available evidence, and is not limited to the defendant's photographs (or other electronic recordings) alone. Thus, for example, even if the defendant's photographs are cropped under-skirt images that capture only a limited view under a woman's skirt, if there is contemporaneous surveillance footage that captures the victim's face and the defendant's actions, that surveillance footage may be offered and considered on the issue of whether the defendant photographed an "identifiable person."

## B. The meaning of "identifiable person"

We begin our analysis with the principles governing a reviewing court's construction of a statute. As the California Supreme Court has explained, "It is well settled that the proper goal of statutory construction 'is to ascertain and effectuate legislative intent, giving the words of the statute their usual and ordinary meaning.' " (*People v. Ramirez* (2009) 45 Cal.4th 980, 987 (*Ramirez*).) "[W]e look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]' [Citation.] That is, we construe the words in question ' "in context, keeping in mind the nature and obvious purpose of the statute . . ." [Citation.]' [Citation.] We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' [Citations.]" (*People v. Murphy* (2001) 25 Cal.4th 136, 142.) " 'When the statutory language is clear, we need go no further. If, however, the language supports more than one reasonable interpretation, we look to a variety of extrinsic aids, including the objects to be achieved, the evils to be remedied, legislative history, the statutory scheme of which the statute is a part, contemporaneous administrative construction, and questions of public policy.' [Citations.]" (*Ramirez*, at p. 987.)

9

Section 647 sets forth several forms of "disorderly conduct," including various forms of "peeping." Subdivisions (j)(2) and (j)(3) concern not only the act of viewing which invades another's privacy, but also the creation of a visual record. These subdivisions use the term "identifiable person," but section 647 does not define the term.[4] We agree with the parties that the meaning of "identifiable person" is not clear and raises several questions.

As noted above, the parties do not contend the People must actually prove up, or ultimately establish, the victim's identity, and we do not give the statute that meaning. The statute requires the recording of an *identifiable* person, not an identified, or named, victim. Yet, by their nature, many videos or photographs taken *under* a person's clothing for the purpose of viewing the person's body or undergarments, may not include a picture of the victim's face or other highly unique features. If identifiable means capable of being identified, we ask: identifiable by whom, and identifiable from what? Must the victim be identifiable in the sense that if a person unacquainted with the victim saw the unlawfully recorded images, that person could recognize the victim again, or, for example, identify the victim from a lineup? This is at least implicitly defendant's argument. Or, as the People argue, does "identifiable" mean something other than capable of being identified? Does the statute require that the victim be identifiable in or

---

[4] Section 647, subdivision (i) prohibits peeking into the door or window of an inhabited building. Section 647, subdivision (j)(1) prohibits peeping through a hole, "by means of any instrumentality . . . . the interior of a bedroom, bathroom, changing room, fitting room, dressing room, or tanning booth, or the interior of any other area in which the occupant has a reasonable expectation of privacy, with the intent to invade the privacy of a person or persons inside." Section 647, subdivision (j)(3)(A), prohibits the use of a "photographic camera of any type, to secretly . . . record by electronic means, another, identifiable person who may be in a state of full or partial undress, for the purpose of viewing the body of, or the undergarments worn by, that other person, without the consent or knowledge of that other person," in the same areas identified in subdivision (j)(1). Section 647, subdivision (j)(4)(A) concerns the distribution of "the image of the intimate body part or parts of another identifiable person," or other sex-related images of the person, "under circumstances in which the persons agree or understand that the image shall remain private," and causing emotional distress.

10

from the secretly recorded image standing alone?  This is defendant's position; the People have discussed identifiability from the recorded images, but also appear to refer to other extrinsic evidence when discussing the facts of this particular case.

We first consider the legislative history.[5]

### 1.  Legislative History

The bill enacting section 647, subdivision (j)(2) – AB 182 – was a response to specific incidents of surreptitious "up-skirt" or "down-blouse" photography that went unprosecuted.  An Assembly Committee on Public Safety analysis of the bill included the following statement from the bill's author:

" 'AB 182 specifically stems from three incidents in Orange County where video cameras were found at Disneyland, the Garden Grove Strawberry festival and at a beach. These cameras were positioned in precarious places to view victims either up their skirts or down blouses, etc.  In some cases, these images were placed in the Internet and could be viewed for a fee.  In these cases, the individuals involved were caught, but law enforcement was unable to file charges against them because of a technicality in the law . . .  Because "public" place was not clearly defined under the "reasonable expectation" standard, thus the offenders were released.  This measure also addresses another type of problem created unintentionally by the advancement of electronics . . . . Some persons have found that infrared technology acts as an "x-ray" in normal light allowing them to view victims through their clothing.' " (Assem. Com. On Public Safety, Analysis of Assem. Bill No. 182 (1999-2000 Reg. Sess.) March 2, 1999, at p. 2, Author's Statement.)

A subsequent analysis from the same committee included the following addition to the author's statement:  " 'It is my intent to provide law enforcement with the means to prosecute those persons who deliberately invade the privacy of unsuspecting victims by using technology not in existence at the time of drafting Penal Code Section 647.  AB 182 does not criminalize the activities of working photojournalists, private investigators,

---

[5]     Even when the plain language of the statute makes reference to extrinsic materials unnecessary, a reviewing court may consult a legislative history for material that confirms the court's construction of statutory language.  (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 316; *People v. Williams* (2013) 218 Cal.App.4th 1038, 1048.)  And, "[t]o determine the purpose of legislation, a court may consult contemporary legislative committee analyses of that legislation, which are subject to judicial notice." (*In re J.W.* (2002) 29 Cal.4th 200, 211.)

11

or law enforcement officers.  By targeting those persons who secretly capture images of others with concealed cameras for their own sexual gratification, this bill is a narrowly drafted response to a rapidly growing problem.' " (Assem. Com. On Public Safety, Analysis of Assem. Bill No. 182 (1999-2000 Reg. Sess.) April 6, 1999, at p. 2, Author's Statement.)[6]

In its original version, the bill rendered it unlawful to "secretly videotape or photograph another person or persons under or through the clothing being worn by that other person or those other persons, for the purpose of viewing the body of, or the undergarments worn by, that other person, or those other persons . . . ." (Assem. Bill No. 182 (1999-2000 Reg. Sess.) as introduced Jan. 19, 1999.)  However, a Senate Committee on Public Safety analysis of the bill raised the issue of whether the victim must be "identifiable."  The analysis stated:

> "The bill creates a new form of criminal invasion of privacy where the perpetrator surreptitiously visually records . . . another person's body or undergarments for purposes of the perpetrator's sexual gratification.  The language of the bill may not clearly state whether or not the victim must be identifiable from the prohibited image to allow conviction under the new crime.  [¶]  However, it appears from the background information that the intent of the author of the bill is that the law could be applied in cases where there is no identifiable victim.  Background information provided by the author included examples of 'up-skirt' photographs (or electronic scans of some sort of visual recording) found on the Internet.  These images depicted only the underclothing of a woman, as seen from behind, under the woman's skirt.  It does not appear possible to determine the identity of the person whose underclothing is depicted in the photograph.  Thus, the bill raises the issue of whether a defendant can be found guilty of criminal violation of privacy where it cannot be determined whose privacy was invaded."  (Sen. Com. On Public Safety, Analysis of Assem. Bill No. 182 (1999-2000 Reg. as amended April 26, 1999, p. 5.)

---

[6]     The statements of a bill's author are generally not considered if there is " 'no reliable indication that the Legislature as a whole was aware of that objective and believed the language of the proposal would accomplish it. [Citations.]' [Citation.]" (*People v. Garcia* (2002) 28 Cal.4th 1176, fn. 5.)  We may consider the statements above as there is a reliable indication the Legislature as a whole was aware of them; the statements are included in Assembly and Senate committee analyses, of which courts commonly take judicial notice as cognizable legislative history.  (See *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 31, 39.)

12

Subsequently the bill was amended to prohibit the secret recording of an "identifiable person" under or through the person's clothing. (Legis. Counsel's Dig., Amends. to Assem. Bill No.182, June 15, 1999, pp. 1, 5.) The final version enacted by the Legislature included the "identifiable person" language.

Although the legislative history suggests the origin of the "identifiable person" language, it does not necessarily confirm defendant's interpretation of the term. While the Senate Committee analysis questioned whether there must be a victim identifiable *from* the prohibited image, the analysis also noted the conflicting goal of prosecuting defendants even when the victim is *not* identifiable from the image. There is no further analysis regarding the term that offers guidance on how the inclusion of "identifiable person" in the statute addressed this conflict. Further, despite the issues raised in the committee analysis, the final language indicated only that the defendant must film, photograph, or record an identifiable person, not that the person must be identifiable *from* the defendant's final product. The statute is, for example, unlike Civil Code section 3344 regarding misappropriation which defines when a person shall be deemed to be "readily identifiable *from*" a photograph. (Civ. Code, § 3344, subd. (b)(1).)

The legislative history is helpful in the sense that it reinforces a general rule of statutory interpretation: we avoid construing a statute so as to render any word meaningless. (*Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 611 [courts may not excise words from statutes; we assume each term has meaning and appears for a reason].) The legislative history suggests the inclusion of "identifiable" was not incidental; the Legislature intended the word to have meaning.

Applying this principle, it is clear the prosecutor's interpretation of the statute was incorrect. Indeed, the People have explicitly abandoned the "human being" argument on appeal. "Identifiable person" cannot simply mean a human being, or a person as opposed to a doll or mannequin. Such a construction would render "identifiable" surplusage. Further, the statute does not require that the recording be of someone identifiable *as a* person, and the legislative history does not indicate the Legislature was concerned about drawing a distinction between photographs of persons and non-persons.

13

## 2. Identifiable Does Not Mean Distinguishable

We next consider the People's contention that "identifiable" means "distinguishable." The People assert that since the recorded images and evidence about the videos make it possible to tell that each victim is a different person, each victim is "distinguishable," or "identifiable" within the meaning of the statute. The argument is based on the definition of identifiable in the New Oxford American Dictionary: "Able to be recognized; distinguishable." However, when interpreting a statute, we give words their usual and ordinary meaning. (*Ramirez, supra,* 45 Cal.4th at p. 987.) "Distinguish" is not a common synonym for "identify" when relating to a person. Instead, Merriam-Webster's Collegiate Dictionary offers the more common definition of identify, as relevant here: "to establish the identity of."[7]

Similarly, the Oxford English Dictionary defines "identifiable" as "able to be identified; capable of identification." It further provides two categories of definitions for identify: "senses relating to association" and "senses relating to categorization or description." In the categorization and description group, the following definitions are listed: "To serve as a means of identification for; to show something or somebody to be"; "to ascertain or assert what a thing or who a person is; to determine the identity of; to recognize as belonging to a particular category or kind; to refer (a plant, animal, or mineral specimen) to its correct species"; "to prove, reveal, or declare one's identity"; "of a witness or victim of a crime: to pick out or recognize (a suspect), esp. from a line-up or from a group of photographs"; "to discover, distinguish, isolate; to locate and recognize or describe."

While "distinguish" is included in the last definition, the predominant theme is that to identify typically means something more akin to determining identity, or to recognize. We cannot agree with the People's argument that "identifiable person" in

---

[7]    The alternative definitions of identity are "to cause to be or become identical," or "to conceive as united," as in to identify *with* something or someone. It seems clear this associational meaning of identify is not what the Legislature intended in the use of "identifiable" in section 647, subdivision (j)(2).

section 647, subdivision (j)(2) means only that it must be possible to distinguish one victim from another. The common and usual meaning of "identifiable" is that it is possible to determine the identity of, or recognize, the person.[8]

### 3. Identifiable Means Identifiable or Recognizable by Someone, Including the Victim

The statute does not indicate to whom the victim must be "identifiable." Defendant contends criminal liability should attach only if a defendant records the victim in such a way that "it is possible to determine her identity from the recorded image, such as by depicting her face or other identifying characteristics, whether or not her identity is ultimately established." In our view, whether it is "possible" to determine the victim's identity or recognize her depends significantly on who is attempting to make the identification. When considering a person unacquainted with the victim, the ability to

---

[8] Defendant refers to a handful of statutes that use the term "identifiable person." (See e.g., Gov. Code, §§ 87102.5, subds. (a)(2)-(4), 87102.6, subd. (a) [prohibiting legislators from influencing governmental decisions in which the legislator has a financial interest, including acts with respect to "nongeneral" legislation, defined in part as legislation that may have an effect on one or more "identifiable persons"]; Lab. Code, § 4558, subds. (a)(1), (b) [allowing an employee to bring an action against an employer under certain circumstances for injuries arising out of the operation of a power press; defining employer as a "named identifiable person"]; Welf. & Inst. Code, § 5600.2, subd. (a)(5) [persons with mental disabilities should have an "identifiable person or team responsible for their support and treatment."]; Civ. Code, § 3344, subd. (b)(1) [civil liability for unauthorized use of another's name, voice, signature, photograph, or likeness, for commercial purposes; photograph defined as a photograph or other specified media, "of any person, such that the person is readily identifiable"; readily identifiable defined as "when one who views the photograph with the naked eye can reasonably determine that the person depicted in the photograph is the same person who is complaining of its unauthorized use."].)

Defendant argues the Legislature used the term in these other statutes to mean a person whose identity can be ascertained. We find these other statutes of minimal assistance in considering section 647, subdivision (j)(2). Each statute uses the term in a significantly different context, and it is not clear that "identifiable person" has the same meaning in each statute.

15

identify the victim would have to implicitly mean if the person saw the victim again. In other words, would the evidence allow the average person to identify or recognize the victim if that person saw the victim again. In that scenario, the average person would likely need a very unique feature to identify a victim the person had never seen before, i.e., a face, a name, an unusual physical feature, etc.

On the other hand, persons with specialized knowledge of some kind may be able to identify or recognize the victim with less unique information. A person acquainted with the victim may be able to identify or recognize the victim based on characteristics less specific than a face, such as body type, unique clothing, or a particular hair cut. The victim would likely have the most specialized knowledge, and may be able to identify or recognize herself based on a particular outfit, article of clothing, body type, or physical profile.

The crime is one in which the defendant often targets a random stranger, for a brief moment in time, in a public place, without the person's knowledge. We do not construe the statute as requiring an *identified* victim, thus we will not read the statute as contemplating that jurors would have the ability to compare the evidence, such as recorded images, with the actual, identified victim (see Civ. Code, § 3344, subd. (b)), to determine whether the defendant recorded an "identifiable person." If there is evidence showing the victim's face or other unique identifying characteristics, the victim is theoretically subject to identification if he or she was seen again.[9] However, interpreting the statute to mean there must always be a record of characteristics so unique that a person unacquainted with the victim could recognize or identify him or her if seen again (as in a lineup), would drastically limit the statute when considered with the realities of how the crime is likely to be carried out. That is, a defendant surreptitiously photographing or filming under or through another person's clothes to view that person's undergarments or body will likely *not* record or capture the person's face, name, address,

_____

[9]     We note that in this case, law enforcement was unable to determine the identity of several of defendants' victims, despite having defendant's video footage which showed these victims' faces.

16

or other identifying features that would allow a person unacquainted with the victim to identify or recognize the victim. The legislative history indicates the Legislature was addressing a situation in which the victim's face was commonly not displayed in the defendant's recorded images.

A more reasonable interpretation is that so long as there is a reasonable probability that *someone* could identify or recognize the victim, the "identifiable person" element is satisfied. This might include a person acquainted with the victim. It could also include the victim herself, who, as noted above, may uniquely be able to identify an image of her own body.[10] Information regarding the time and location of the recording, combined with other identifying information about the victim such as body type, hair color or length, distinctive clothing or handbag, may be enough to allow the fact finder to conclude it is reasonably probable someone, including the victim herself or himself, could identify or recognize the person the defendant unlawfully filmed, photographed, or otherwise recorded.

For example, the videos relating to Francisca M. did not show her face. Yet, she readily identified herself when the prosecutor showed her the first seconds of one of the videos at trial. In another example, the prosecution offered evidence of an uncharged incident in which defendant filmed a woman (Courtney D.) from behind at a Target store. Although defendant's footage included only a brief, blurry image of Courtney D.'s face, it captured clear images of the face of her daughter, who was wearing a school uniform. Police ascertained the child's school from the uniform. With that link, police were able to locate Courtney D., who testified at trial. The video footage alone may not have allowed a person unacquainted with Courtney D. or her daughter to identify or recognize

---

**10**    For example, if the victim comes across upskirt images of herself on the internet, she might be able to recognize herself, even without seeing her face in the image. Similarly, if law enforcement issues a public notification with recorded images and other known information about the circumstances of the recording, the average victim may uniquely be able to identify herself or himself from the information and images provided.

her, even if the person saw her again. However, she was "identifiable" to law enforcement, with the benefit of investigation.

### 4. Identifiability is Determined From Any or All of the Evidence Offered

Defendant implicitly contends the victim must be identifiable *from* the recorded image alone, and the People primarily discuss whether a victim is identifiable *from* the recorded images. Yet, section 647, subdivision (j)(2) does not explicitly state that the victim must be identifiable from the recorded image that results from the defendant's actions. The statute indicates the unauthorized act of secretly photographing or recording an identifiable person to view the person's undergarments or body, for sexual gratification and to invade the person's privacy, is unlawful. The defendant must make an electronic recording of another, identifiable person. But, the language of the statute allows the conclusion that evidence in addition to the recorded image may be used to determine whether the victim is "identifiable."

We thus disagree that the victim must be identifiable solely from the image recorded by the defendant. While in many cases the only evidence of the crime might be the recorded images resulting from the defendant's actions, this is not always the case. For example, here, defendant was apprehended after Andrea and Raquel M. realized what he was doing and reported him to others, thereby identifying Andrea, the victim. Andrea was also "identifiable" because store security cameras recorded defendant in the act of taking upskirt video footage, and the store security cameras captured Andrea and Raquel M.'s faces. Even if defendant's own video footage had not recorded any identifying characteristics of Andrea, he had arguably still filmed an "identifiable person." Indeed, it would be inimical to the legislative purpose of preventing the invasion of privacy caused by "upskirt" photography if, despite being caught in the act by an *identified* victim, a defendant could escape criminal liability because his video footage managed to avoid recording any of that victim's identifying characteristics. We do not interpret statutes in a manner that results in illogical results, or results that would be clearly contrary to the Legislature's intent. (*People v. Torres* (2013) 213 Cal.App.4th 1151, 1158.)

18

" '[I]f a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation].' [Citations.]" (*Torres,* at p. 1160.) We conclude "identifiable person" cannot mean it must be possible to identify or recognize the victim from the defendant's recorded image alone, even when there is other evidence that would make it possible to identify or recognize the victim. Identifiable must at least also include when the victim may be identified or recognized from sources other than the defendant's recordings, such as contemporaneous video footage or photographs.

### 5. Consistency with Legislative Purpose

Thus, when taken together, the evidence must show it is reasonably probable that a person—the victim herself, someone acquainted with the victim, law enforcement, an eyewitness—could recognize or determine the identity of the victim the defendant has recorded. If the only evidence the People can offer is a recorded upskirt image, with no distinctive characteristics, and no extrinsic evidence that could be used to identify the victim, the People will likely be unable to establish the "identifiable person" element. This interpretation results from reading the plain language of the statute, and is consistent with the legislative history. One need not read words into or out of the statute to understand the "identifiable person" requirement as permitting the factfinder to consider all available evidence, not just the recording itself, or to allow that identifiable means identifiable to anyone, including the victim.[11]

---

[11]    Defendant does not invoke or rely on the rule of lenity, which generally provides that "when a statute defining a crime is susceptible of two reasonable interpretations . . . a court [is required] to prefer the interpretation that is more favorable to the defendant." (*People v. Manzo* (2012) 53 Cal.4th 880, 889.) Even had defendant suggested the rule applied, we would disagree. As explained in *Manzo*, the rule does not apply every time there are two or more reasonable interpretations of a penal statute. (*Id.* at p. 889.) Instead, it " 'is a tie-breaking principle, of relevance when " 'two reasonable interpretations of the same provision stand in relative equipoise . . . .' " ' [Citation.]" (*Ibid.*) " '[T]he rule does not "require[ ] that a penal statute be strained and distorted in order to exclude conduct clearly intended to be within its scope—nor does any rule require that the act be given the 'narrowest meaning.' It is sufficient if the words are

19

We acknowledge that giving any meaning to "identifiable" allows some offensive acts associated with "upskirt" voyeurism to go unpunished. As noted above, the very nature of "upskirt" or "down blouse" recordings is such that in many cases the victim may not be identifiable or recognizable from the recorded visual images, and there may be no other evidence of the crime. Yet, this was no doubt apparent from the websites featuring upskirt photographs that were part of the discussion related to A.B. 182. Indeed, the Safety Committee policy analysis which raised the issue of an identifiable victim also noted that on "upskirt" websites included in background information provided with A.B. 182, "it does not appear possible to determine the identity of the person whose underclothing is depicted in the photograph." (Policy analysis at p. 5.)

The People contend it leads to absurd results to construe the statute in such a way that a defendant can easily evade criminal liability, either by being careful while engaging in the offensive act of filming under another person's clothes, or by editing the recorded images after the fact. Of course we must interpret legislative enactments so as to avoid absurd results. (*Mt. Hawley Ins. Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1414.) Indeed, " '[i]n determining what the Legislature intended we are bound to consider not only the words used, but also other matters, "such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy and contemporaneous construction." [Citations.]' These 'other matters' can serve as important guides, because our search for the statute's meaning is not merely an abstract exercise in semantics. To the contrary, courts seek to ascertain the intent of the Legislature for a reason—'to *effectuate the purpose* of the law.' " ' [Citations.]" (*Id.* at p. 1397.) Moreover, "the rule against interpretations that make some parts of a statute surplusage is only a guide and will not be applied if it would defeat

given their fair meaning in accord with the evident intent of [the legislative body]." ' [Citation.]" (*Id.* at p. 890.) In this case, the rule of lenity does not require that we interpret section 647, subdivision (j)(2) to mean the victim must be identifiable from the recorded image alone, nor does it mandate that we adopt the narrowest possible meaning of "identifiable."

legislative intent or produce an absurd result. [¶] . . . [¶] In the end, a court must adopt the construction most consistent with the apparent legislative intent and most likely to promote rather than defeat the legislative purpose and to avoid absurd consequences." (*In re J.W., supra,* 29 Cal.4th at pp. 209, 213.)

Yet, while meaningfully interpreting "identifiable" limits the reach of the statute, we disagree that the result is absurd or contrary to the purpose of the law. The language of the statute and the legislative history indicate that, while an invasion of privacy may occur whenever a defendant takes an upskirt or down-blouse photograph or video, regardless of what ends up in the recorded image, the Legislature did not intend to create criminal liability for upskirt photography when it would be impossible for anyone to ever determine the identity of the victim. The Legislature's inclusion of an "identifiable person" element can be understood as manifesting a legislative intent to limit criminal liability for upskirt photography to the instances that arguably pose the greatest invasion of privacy—when it is reasonably probable someone could recognize or otherwise determine the identity of the victim, even if the category of persons able to do so is limited to the victim.

Our construction of the statute acknowledges the victim may be identifiable from a source other than the recording itself, and further acknowledges that a victim is identifiable if it is reasonably probable someone, including the victim, could determine her identity or recognize her. This is consistent with a legislative goal of criminalizing the invasive act when it poses the most significant risk of harm to specific individuals: when it is reasonably probable the victim could be recognized or recognize himself or herself, potentially leading to the victim's humiliation and embarrassment. We stress that the Legislature has the prerogative to amend the statute if it intended section 647, subdivision (j)(2) to have either a broader or narrower scope.

### 6. Conclusion

In sum, to prove a violation of section 647, subdivision (j)(2), the People need not establish the victim has actually been identified. The statute does not call for an "identified" or "named" person. The People need not offer evidence showing the

21

victim's identity has been determined, or offer the victim's testimony. Instead, the People must establish, beyond a reasonable doubt, that when all of the evidence is considered, it is reasonably probable someone could identify or recognize the victim. This may include the victim herself or himself. If the only evidence of the crime is a recorded image that includes no unique or identifying characteristics, and there is no evidence extrinsic to the image the defendant recorded, such that it is not reasonably probable even a victim could recognize herself or himself from the evidence, the People will be unable to establish the "identifiable person" element of a section 647, subdivision (j)(2) violation.

## B. The Evidence in this Case was Sufficient to Support the Convictions

Although we conclude below that the verdicts on the challenged counts must be reversed due to instructional error, we nevertheless consider defendant's argument regarding the sufficiency of the evidence to determine whether defendant may be retried on those counts. (*People v. Morgan* (2007) 42 Cal.4th 593, 613; *People v. Franco* (2009) 180 Cal.App.4th 713, 726.)

Having interpreted the statute, "the question of whether the evidence at trial is sufficient to establish a violation of the statute, as so construed, is subject to deferential review. [Citation.] Our 'task is to "review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citation.]" (*People v. Guion* (2013) 213 Cal.App.4th 1426, 1434-1435.) The evidence in this case was sufficient to support the convictions on counts 8, 9, 11, 14, and 15. In each case, after considering all of the evidence, the jury could reasonably conclude it is reasonably probable someone could determine the identity of or recognize the victim. We consider each of the challenged counts separately.

Count 9 was supported by video footage taken at a Target store in Lancaster on March 16, 2013, the same day defendant was apprehended, and after he was noticed by Andrea and Raquel M. at the same store. Video footage from defendant's phone showed

a woman wearing a dress with a white background and distinctive black and purple polka dots. Her shoes are visible, as are her pink underwear, her legs, her thighs, and the bottom of her buttocks, as well as birthmarks or moles on those areas. The footage also clearly shows the victim's purse, the side of her body, her arms, and her hair. The videos tracked the victim's movement through part of the store (i.e., the viewer can tell the victim is browsing in the girl's clothing section). In addition to the video taken from defendant's phone, the prosecution offered video surveillance footage from the store. In the surveillance videos, the victim can be seen from the back, the side, and even briefly from the front, such that her face is on screen. Substantial evidence supported a finding that the victim in count 9 was identifiable.

For counts 8, 11, 14, and 15, the only evidence offered was video footage from defendant's phone, and testimony regarding the date and location of the recording. No evidence displayed the victims' faces or other obviously unique identifying information, such as the license plate number in the Francisca M. count. However, when taken together, there was still sufficient evidence for the jury to conclude it is reasonably probable the person filmed could be recognized or identified.

The evidence supporting count 8 was video footage recorded on March 15, 2013, at a retail store. In the video, the victim's feet and sandals are visible, as are her legs, her thighs, the black, ruffled bottom of her skirt or dress, a glimpse of the bottom of her purse, and her underwear, which are black, with a lace or scalloped edge. The video footage for count 11 was recorded on an escalator in a train station on August 2, 2012. The video shows the victim's legs, her pink sneakers, a rainbow-striped skirt, and her bag, which is black with a distinctive pattern in red, green, purple, and blue writing. The victim stands next to another woman whose profile, hair, and glasses are captured on film. For count 14, there was video footage defendant recorded on the Hollywood Walk of Fame on August 17, 2012. The footage displays the victim's legs, arms, and back. Also visible is the back of the victim's dress, which is short, form-fitting, black and ruffled or textured, her green flat shoes, and her purse, which she wears across her body. The video footage for count 15 was taken on an escalator at a Metrolink train station on

August 17, 2012.  The victim's legs, back, the entire back of her head, and a portion of the side of her face are captured on the video.  Her outfit or dress consists of a tan skirt, a gray blouse with white polka dots, and a braided black belt.  Her purse is visible.  Her black undergarments are also partially visible.

On each count, there was substantial evidence that it is reasonably probable someone, including at least the victim, could recognize or determine the identity of the person in the video.  There was substantial evidence to support convictions on counts 8, 9, 11, 14, and 15.

## II.    Instructional Error

Defendant contends the trial court erred in failing to sua sponte instruct the jury on the definition of "identifiable person."  We agree that under the circumstances of this case, a trial court instruction on the meaning of "identifiable person" was required, even absent a request from defendant.

### A.  Background

As noted above, the trial court's instruction to the jury on the elements of section 647, subdivision (j)(2) mirrored the language of the statute and did not define "identifiable person."  Defendant did not object to the instruction or request any clarifying language.  However, during closing arguments, the prosecutor and defense counsel offered two conflicting interpretations of the term "identifiable."

### B.  Applicable Legal Principles

" 'The rules governing a trial court's obligation to give jury instructions without request by either party are well established.  "Even in the absence of a request, a trial court must instruct on general principles of law that are . . . necessary to the jury's understanding of the case."  [Citations.]  That obligation comes into play when a statutory term "does not have a plain, unambiguous meaning," has a "particular and restricted meaning" [citation], or has a technical meaning peculiar to the law or an area of law [citation].'  [Citation.]  'A word or phrase having a technical, legal meaning requiring clarification by the court is one that has a definition that *differs* from its nonlegal meaning.'  [Citations.]"  (*People v. Hudson* (2006) 38 Cal.4th 1002, 1012 (*Hudson*).)

Put another way, " '[t]he general rule provides that in defining the elements of a crime it is enough for the court to instruct in the language of the statute when the defendant fails to request an amplification thereof. [Citations.] But that rule is always subject to the qualification that " ' "An instruction in the language of a statute is proper only if the jury would have no difficulty in understanding the statute without guidance from the court." ' " [Citation.]' However, it is well settled that where the terms 'have no technical meaning peculiar to the law, but are commonly understood by those familiar with the English language, instructions as to their meaning are not required. [Citations.]' [Citation.]" (*People v. Howard* (1988) 44 Cal.3d 375, 408; *People v. Rodriguez* (2002) 28 Cal.4th 543, 546-547.)

In this case, "identifiable person" does not have a "technical meaning peculiar to the law or an area of law." However, as can be seen from our discussion of the term above, we have concluded "identifiable person" does not have a "plain and unambiguous meaning," and instead has a "particular and restricted meaning." (*Hudson*, at p. 1012; *People v. Mayfield* (1997) 14 Cal.4th 668, 773 (*Mayfield*).) Further, we cannot confidently conclude the jury would be able to understand the statute without guidance from the court. Simply informing the jury that the People had to prove defendant used a concealed recording device to secretly film another identifiable person through that person's clothing, could have suggested to the jury that the victim had to be merely identifiable as a person. Although we have rejected this interpretation because it would render "identifiable" surplusage, we cannot assume the jury would similarly apply this legal rule of statutory construction. While we have concluded "identifiable" in the statute can be understood with a common definition of the word, the definition alone does not answer the corresponding questions that logically follow: identifiable from what evidence and identifiable by whom. Nothing in the instruction offered any guidance on these two questions. (See *People v. Ellis* (1999) 69 Cal.App.4th 1334, 1339 [because the term "speeding" was not clear and definite, trial court had sua sponte duty to give an amplifying or clarifying instruction defining the term].)

25

In this particular statutory context, that the defendant must secretly record an "identifiable person" carries a particular meaning that is not obvious without explanation. The trial court should have instructed the jury that "identifiable person" meant that, given all of the circumstances, including the recorded images and any other evidence, it is reasonably probable someone could identify or recognize the victim, including the victim herself. We therefore conclude the instruction was not a "reliable guide" to the meaning of "identifiable person" under the circumstances of this case. (*Mayfield, supra,* 14 Cal.4th at p. 774.)

We next consider whether this error was prejudicial. "An instruction that omits a required definition of or misdescribes an element of an offense is harmless only if 'it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." ' [Citations.] 'To say that an error did not contribute to the verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.' [Citation.]" (*Mayfield, supra,* at p. 774.) Under the circumstances of this case, we cannot find the trial court's failure to instruct the jury on the meaning of "identifiable person" did not contribute to the verdict. Here, any ambiguity in the meaning of the term was compounded by the parties' conflicting interpretations of the statute. We cannot say with any certainty that, in the absence of an instruction from the court defining "identifiable person," the jury would have rejected the prosecutor's argument that the statute required the People only to prove that defendant recorded someone identifiable as a human being. Further, while we have concluded there was substantial evidence to support the convictions, the evidence of identifiability was not overwhelming. Some of the challenged counts presented a close case.

Moreover, as the People acknowledge on appeal, when instructional error results in the jury being presented with an incorrect legal theory, reversal is required unless it is possible to determine the jury necessarily found the defendant guilty on a proper theory. As explained in *People v. Perez* (2005) 35 Cal.4th 1219, 1233 (*Perez*), "[w]hen one of the theories presented to a jury is legally inadequate, such as a theory which ' "fails to come within the statutory definition of the crime" ' [citations], the jury cannot reasonably

26

be expected to divine its legal inadequacy. The jury may render a verdict on the basis of the legally invalid theory without realizing that, as a matter of law, its factual findings are insufficient to constitute the charged crime. In such circumstances, reversal generally is required unless 'it is possible to determine from other portions of the verdict that the jury necessarily found the defendant guilty on a proper theory.' [Citation.]" (*Id.* at p. 1233.)

In this case, the trial court's instructions failed to provide the jury with guidance on the meaning of "identifiable person." As a result, although the jury was instructed to follow the court's instructions on the law if an attorney's comments on the law conflicted with the court's instructions, there were no instructions on "identifiable person" from the court for the jury to follow. The lack of an instruction from the trial court made way for the jury to be presented with an incorrect legal theory on the meaning of "identifiable person." Nothing in the record allows us to determine that the jury necessarily rejected the prosecution's untenable legal theory. (*Perez, supra,* 35 Cal.4th at p. 1233.)

In sum, the jury was instructed only with the words of the statute, without an instruction on the definition of an element of the offense. Given the particular meaning of "identifiable person" in the statute, a definition was required. Further, we are unable to conclude that this error was unimportant in relation to everything else the jury considered on the issue of whether defendant secretly filmed identifiable persons in the challenged counts. The evidence on several challenged counts was close as to whether the victims could be identified. The jurors were then presented with two competing arguments about the meaning of "identifiable person," one of which was legally invalid and lowered the prosecutor's burden of proof. With an instruction specifying that the People had to prove there was enough evidence to render it reasonably probable someone could identify or recognize the victims, the jury may have concluded on some of the charged counts that defendant did not secretly film "identifiable persons." Under these circumstances we must conclude the error in failing to instruct on the meaning of "identifiable person" was prejudicial as to the challenged counts.

The convictions on the challenged counts must be reversed. We therefore need not consider defendant's ineffective assistance of counsel argument.

27

**IV. Modification of the Judgment**

Finally, the People contend the trial court imposed an unauthorized sentence because the amount of custody credit awarded was incorrect, and the court failed to impose the proper amount of penalty assessments. Defendant did not respond to these arguments in his reply brief.[12] Although we are reversing the convictions on counts 8, 9, 11, 14, and 15, and the People may elect to retry those counts, the reversal and any retrial will not affect the custody credits already calculated and awarded. Further, defendant has not challenged the section 243.4 (sexual battery) conviction, to which the penalty assessments attached. Thus, we consider, and find merit in, the People's arguments.

**A. Custody Credit**

The trial court awarded defendant 254 days of actual custody credit and 254 days of conduct credit, for a total of 508 days of presentence custody credit. However, defendant was arrested on March 16, 2013, and sentenced on October 31, 2013. The court therefore should have awarded him 230 days of actual custody credit, and 230 days of conduct credit, for a total of 460 days of presentence custody credit. (§ 4019, subd. (f); *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48.)

**B. Penalty Assessments**

In *People v. Hamed* (2013) 221 Cal.App.4th 928 (*Hamed*), the court explained the penalty assessments applicable to a $300 base fine under section 290.3,[13] which was imposed here: "(1) a 100 percent state penalty assessment (§ 1464, subd. (a)(1)) equal to

---

[12]    The People may challenge an unauthorized sentence at any time, and may do so on a defendant's appeal. (*People v. Smithson* (2000) 79 Cal.App.4th 480, 502-503; *People v. Rowland* (1988) 206 Cal.App.3d 119, 126.)

[13]    Penal Code section 290.3, subdivision (a) provides: "Every person who is convicted of any offense specified in subdivision (c) of Section 290 shall, in addition to any imprisonment or fine, or both, imposed for commission of the underlying offense, be punished by a fine of three hundred dollars ($300) upon the first conviction or a fine of five hundred dollars ($500) upon the second and each subsequent conviction, unless the court determines that the defendant does not have the ability to pay the fine." Defendant was convicted of one count under section 243.4 (sexual battery), which is specified in section 290, subdivision (c).

28

$300; (2) a 70 percent additional penalty (Gov. Code, § 76000, subd. (a)(1)) equal to $210; (3) a 20 percent state surcharge (§ 1465.7) equal to $60; (4) a 50 percent state court construction penalty (Gov. Code, § 70372) equal to $150; (5) a 20 percent additional penalty for emergency medical services (Gov. Code, § 76000.5) equal to $60; (6) a 10 percent additional DNA penalty (Gov. Code, § 76104.6, subd. (a)(1)) equal to $30; and (7) a 30 percent additional state-only DNA penalty (Gov. former Code, § 76104.7) equal to $90." (*Hamed*, at pp. 940-941, fns. omitted.) The only difference in this case is that state-only DNA penalty under Government Code section 76104.7, subd. (a), has increased to 40 percent, equaling $120, instead of $90. (See also *People v. Castellanos* (2009) 175 Cal.App.4th 1524, 1529 (*Castellanos*) [Los Angeles County Board of Supervisors has adopted resolution authorizing imposition of Government Code, § 76000.5, subdivision (a)(1) penalty assessment].) Thus, the penalty assessments should have totaled $930. Instead, the court assessed penalty assessments of only $870, without orally pronouncing the penalties and assessments, or delineating the amounts and statutory bases in the abstract of judgment.

As the People acknowledge, some courts have concluded that when a fine has an ability to pay provision, and when the reviewing court imposes penalty assessments greater than what was originally imposed, the matter should be remanded to the trial court for a determination of whether the defendant has the ability to pay the newly-imposed amount. (*Castellanos, supra,* 175 Cal.App.4th at pp. 1531-1532; *People v. Valenzuela* (2009) 172 Cal.App.4th 1246, 1249-1250 (*Valenzuela*).) Yet, the People urge we follow the reasoning of the court in *People v. Knightbent* (2010) 186 Cal.App.4th 1105, 1112-1113, which concluded: "[N]either justice nor common sense justifies further expense to conduct a hearing on defendant's ability to pay, absent any indication that [he] lacks the ability to pay," particularly if the increased amount is minimal.

While we might be inclined to follow this reasoning were we affirming the judgment in its entirety, we are reversing the convictions on several counts, and the People will have the option to retry those counts. A new sentencing hearing will be necessary, no matter how the People elect to proceed. Thus, we find it appropriate to

29

direct the trial court to conduct a hearing concerning defendant's ability to pay the $300 section 290.3, subdivision (a) sex offender fine, "in light of his total financial obligations," which includes the total amount of fines and assessments as detailed above. (*Valenzuela, supra,* 172 Cal.App.4th at p. 1250.)  Further, "[a]s to whatever ultimate determination is made concerning the sex offender fine and the penalty assessments, surcharge, and construction penalty, the trial court is to actively and personally insure the clerk accurately prepares a correct amended abstract of judgment."  (*Ibid.*)  The abstract of judgment should detail the amounts of and statutory basis for the base fine and each of the penalty assessments imposed.  (*Hamed*, at p. 940; *People v. Sharret* (2011) 191 Cal.App.4th 859, 864; *People v. High* (2004) 119 Cal.App.4th 1192, 1200.)

## DISPOSITION

The judgment is reversed as to counts 8, 9, 11, 14, and 15, and the matter is remanded for retrial on those counts.  If the prosecution elects not to retry those counts, or at the conclusion of retrial, the court shall resentence defendant, and consider the appropriate penalty assessments at that time, determining defendant's ability to pay. The judgment is modified to reflect an award of 460 days of presentence custody credits through the end of the first trial.  In all other respects, the judgment is affirmed.  The trial court is directed to amend the abstract of judgment to reflect the corrected presentence custody credits upon resentencing and forward copies to the Department of Corrections and Rehabilitation.

**CERTIFIED FOR PUBLICATION**


BIGELOW, P. J.

We concur:

RUBIN, J.


FLIER, J.

30