Filed 6/26/26  P. v. Rushing CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE,<br>    Plaintiff and Respondent,<br><br>    v.<br><br>EDWARD RICHARD RUSHING III,<br>    Defendant and Appellant. | C102863<br><br>(Super. Ct. No. 24FE003071) |

Following the trial court's denial of his motion for mental health diversion under Penal Code section 1001.36, defendant Edward Richard Rushing III pled no contest to second degree burglary and admitted a prior strike.  The court sentenced defendant to four years in state prison.  On appeal, defendant contends the trial court abused its discretion in denying him mental health diversion.  He argues the prosecution failed to present clear and convincing evidence to overcome the presumption that defendant's mental health disorders were a significant factor in his committing the charged offenses.  We disagree with that.  But we agree that defendant received one less day of credit.  So we modify the judgment in that regard and affirm as modified.

Undesignated section references are to the Penal Code.

**FACTUAL AND PROCEDURAL BACKGROUND**

Around 3:00 a.m. on February 5, 2024, defendant entered a department store by smashing the front doors.  Defendant took 100 to 125 necklaces together worth $265,000.

1

In March 2024, defendant was charged with second degree burglary, (§ 459) and it was alleged that defendant suffered three prior strikes (§§ 667, subds. (b)-(i), 1170.12). Defendant was also charged with unlawful possession of drug paraphernalia (Health & Saf. Code, § 11364).

In August 2024, defendant filed a request for mental health diversion under section 1001.36. Defendant stated he had been diagnosed with post-traumatic stress disorder (PTSD), as well as substance abuse disorder involving methamphetamine and cannabis.

As proof of these diagnoses and their link to the charged offenses, defendant attached to his motion a June 2024 crisis assessment form completed by a licensed therapist based on an interview with defendant. In the interview, defendant reported that his mood was "up and down." He was currently taking psychiatric medication that leveled off his anxiety "ups and downs," lessened his anxiety peaks, and reduced panic attacks. Still, defendant felt depressed at times and had poor concentration. He also suffered PTSD symptoms of hypervigilance, avoidance of normal activities, vivid memories, and difficulty concentrating once triggered.

Defendant reported he had been receiving monthly medication for two-and-a-half years before his current arrest. He had sought treatment after being released from prison because his PTSD made it hard to do normal things like go to the grocery store.

Defendant said that during his childhood his father was physically abusive, leading defendant to be a chronic runaway. He had been shot twice and stabbed once. During his 20 years in prison, he was exposed to extreme stress and violence.

As to substance use, defendant reported smoking a large quantity of methamphetamine daily for two years and using cannabis weekly. He suffered serious withdrawals from methamphetamine during his first three weeks of incarceration.

The therapist opined that defendant "was likely experiencing mental health problems" at the time of his arrest. She stated defendant's symptoms indicated a

2

diagnosis of PTSD and moderate amphetamine use disorder in early remission in a controlled environment. She recommended moderate intensity mental health services through a community mental health services provider.

Defendant additionally submitted supportive letters and emails, as well as records and certificates of courses and programs he completed while incarcerated.

In September 2024, the People filed an opposition to defendant's motion for mental health diversion. The People contended there was clear and convincing evidence that defendant's mental health disorder was not a significant factor in the commission of the charged offenses. The People argued defendant's crime demonstrated sophistication and planning.

Summarizing facts derived from attached police reports, the People stated that on February 5, 2024, a burglar alarm at the department store in a mall went off at approximately 3:00 a.m. The responding officers discovered the front doors broken, a jewelry case smashed, and 116 gold necklaces with a combined value of $265,000 stolen.

Surveillance footage showed a car pulling up to the mall near the time of the burglary and two men getting out. One of the men, later identified as defendant, used a window punch to break an exterior glass door and got back in the car. He returned and used a window punch to break the interior glass doors, clearing shattered glass with his elbow.[1] Defendant left again, waited in the car, and then returned and entered the store with the other man. Defendant went directly to the jewelry case, smashed it open with a crowbar, took the gold necklaces, ran out, and left in the car.

An officer searched a database and found a car matching the description of the car in the surveillance video in the area of the mall around the time of the offense. The car

---

[1] As documented in police reports, review of video surveillance footage showed longer intervals between defendant's leaving the scene after breaking the exterior and interior glass doors and then returning.

was registered to defendant. Cell phone records also showed defendant's cell phone pinging off cell towers in the area of the mall at the time of the burglary.

When arrested, defendant had 282.9 grams of melted gold in a balled-up sock in his pocket. In his car, officers found a cast iron skillet with burn marks and metal, a receipt for acetylene, oxygen, a gold appraisal kit, a pencil torch, a skill torch kit, borax, and flammable glass containers. A search of defendant's residence found a similar balled-up sock containing a small amount of a crystalline substance believed to be methamphetamine and a glass pipe with a bulbous end used to smoke methamphetamine.

Defendant's prior convictions included 13 felonies and 12 misdemeanors. Defendant's last conviction for robbery in May 2013 resulted in a prison sentence of 15 years.

In November 2024, the trial court conducted a hearing on defendant's motion for mental health diversion. Defense counsel argued that defendant had qualifying diagnoses under section 1001.36 for PTSD and substance use disorder. Counsel argued that the nexus between defendant's mental disorders and the charged offenses was that defendant was attempting to obtain goods to exchange for drugs to self-medicate and facilitate treatment of his mental disorders, as further evidenced by the discovery of methamphetamine and methamphetamine paraphernalia when he was arrested. The prosecutor countered that there was no link between defendant's diagnoses and the crimes, given defendant's 30-year record of theft-related offenses and the sophistication and planning that went into his theft of $265,000 of jewelry.

The trial court denied defendant's motion, finding there was clear and convincing evidence to overcome the presumption that defendant's mental health disorder was a

significant factor in defendant's commission of the offense.[2]  After summarizing the facts

of the burglary and the items found when defendant was arrested, the court observed that

"it appears as though this crime was committed with the purpose to get high value

product, more than enough to be able to support whatever amphetamine use disorder

[defendant] is diagnosed with."

A week after the hearing, defendant pled no contest to second degree burglary and

admitted one strike, in exchange for a middle-term prison sentence doubled by the strike.

In accordance with the agreement, the trial court sentenced defendant to four years in

state prison.  The court awarded defendant 556 days of custody credit.

Defendant timely appealed.  The trial court granted defendant's request for a

certificate of probable cause to appeal denial of mental health diversion.

## DISCUSSION

### I.  *Mental Health Diversion*

Defendant contends the trial court abused its discretion because substantial

evidence did not support the court's conclusion that the sophistication and high value of

the theft demonstrated that defendant was not acting due to his PTSD and substance

abuse disorders.  We disagree.

Section 1001.36 provides "a defendant is eligible for mental health diversion

if:  (1) the defendant presents evidence that in the last five years he has been diagnosed

by a qualified mental health expert with a mental disorder as identified in the most recent

edition of the Diagnostic and Statistical Manual of Mental Disorders; and (2) the

defendant's mental disorder was a significant factor in the commission of the charged

---

[2]  The clerk's minute order states the motion was denied as "[e]ligible not suitable," rather than "[i]neligible," as the trial court ruled at the hearing.  When the reporter's and clerk's transcripts are in conflict, the trial court's oral pronouncement controls.  (See *People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2; *People v. Mitchell* (2001) 26 Cal.4th 181, 185-186.)

offense." (*People v. Doron* (2023) 95 Cal.App.5th 1, 8; § 1001.36, subd. (b)(1), (2).) On the second criterion, section 1001.36, subdivision (b)(2) creates a presumption that " 'a defendant's diagnosed "mental disorder" has a connection' " to the offense and permits "the court to deny diversion if the People rebut[ ] the presumption." (*People v. Doron*, at p. 8.) Section 1001.36, subdivision (b)(2) provides: "If the defendant has been diagnosed with a mental disorder, the court shall find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (See also *People v. Brown* (2024) 101 Cal.App.5th 113, 120.)

We review an order denying a request for section 1001.36 diversion for abuse of discretion. (*Vaughn v. Superior Court* (2024) 105 Cal.App.5th 124, 135; *People v. Graham* (2024) 102 Cal.App.5th 787, 795.) We review the trial court's finding "whether [] defendant's disorder played a significant role in the commission of the charged offense" for substantial evidence. (*People v. Oneal* (2021) 64 Cal.App.5th 581, 589; *People v. Brown, supra*, 101 Cal.App.5th at p. 121; *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1079 ["The trial court's determination 'whether the defendant's disorder played a significant role in the commission of the charged offense' is 'a quintessential factfinding process' subject to review for substantial evidence"].) "When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.) The court "must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the

evidence." (*Ibid.*) " 'It is appellant's burden on appeal to establish an abuse of discretion and prejudice.' " (*People v. Pacheco* (2022) 75 Cal.App.5th 207, 213.)

We conclude substantial evidence supports the trial court's finding that there was clear and convincing evidence to overcome the presumed nexus between defendant's diagnosed mental disorders and the charged offenses.

First, while defendant told the therapist PTSD made it difficult to concentrate and "hard to do things like go to the grocery store," defendant's actions during the burglary were methodical, carefully planned, and designed to extract maximum value from the crime. (See *People v. Bunas* (2022) 79 Cal.App.5th 840, 861-862 [to determine whether defendant is eligible for diversion, the trial court may consider the circumstances of the charged offenses].) He broke into the store in two stages, first breaking the exterior doors and then the interior doors. At each stage, he immediately retreated to his vehicle, drove away from the store entrance to a more distant parking lot, and waited before returning. After breaking the interior doors, defendant stayed away for more than an hour before returning. This sequence of events supports a reasonable inference that defendant was assessing whether an alarm had been set off and law enforcement was responding. Once in the store, defendant went straight to the fine jewelry counter containing the necklaces, indicating he had prior knowledge and had determined in advance exactly what to take. Defendant brought the tools needed to efficiently break in, namely a window punch for the doors and a crowbar for the counter. Defendant took only gold necklaces, which were not only high value but also easy to carry away in volume. Only two minutes elapsed from when defendant returned, entered the store, smashed the jewelry counter glass, took the necklaces, exited the store, and drove away. Defendant's efficient and expeditious actions at this stage of the burglary suggest that he knew breaking the jewelry counter would set off an alarm. Law enforcement in fact responded about 20 minutes later to a report of an alarm at the store. Evidence that defendant's burglary exhibited a high level of planning and execution is clear and convincing proof that defendant was not

7

experiencing difficulty in concentrating due to PTSD. (See *People v. Brown, supra*, 101 Cal.App.5th at pp. 122-124 [no error where the trial court refused to find a causal link between defendant's mental disorder and crime because of defendant's rational behavior at the time of the crime].) Additionally, as the trial court pointed out, the high value of the items stolen indicates that defendant did not commit the crime simply to satisfy his drug addiction.

Second, defendant stole only gold jewelry that, in addition to its high dollar value, could be rendered untraceable by melting it down. Melted gold pieces were found in a balled-up sock in defendant's pocket and materials to melt gold and appraise its value were found in his car. Defendant's behavior indicates a rational effort to maximize financial gain and minimize risk.

Third, defendant's criminal history confirms that economics not PTSD or substance abuse disorder motivated him to commit the burglary. (*People v. Williams* (2021) 63 Cal.App.5th 990, 1002 [in ruling on a section 1001.36 motion, the trial court may consider the defendant's "criminal record"].) Beginning in 1990, defendant had multiple convictions for first and second degree burglary and receiving stolen property, culminating in a robbery conviction in 2013 for which he received a 15-year sentence. The long-term and repeated incidence of convictions for theft-related offenses strongly suggests that, like his other offenses, defendant committed the current crime for financial gain.

The sole evidence defendant presented to the trial court that mental illness was a significant factor contributing to his burglary is a single line in the therapist's assessment: "Client was likely experiencing mental health problems when arrested . . . ." No reasoning or explanation is provided for this opinion expressed as a mere likelihood. On appeal, however, defendant cites studies he claims establish that a burglary committed "to potentially self-medicate for his [] PTSD and Amphetamine Use Disorder is consistent with impulsive behavior stemming from these disorders." He asserts "the burglary itself

8

is a literal diagnostic manifestation of appellant's mental health disorders." These studies, however, were not presented to the trial court to show a link between defendant's mental health disorders and the charged offenses. Accordingly, we do not consider them. (*People v. Thomas* (1984) 159 Cal.App.3d Supp. 18, 23.)

We conclude the objective facts affirmatively demonstrate defendant's actions were planned, methodical, and efficient, thereby refuting any difficulty concentrating or impulsive behavior that defendant would experience if his mental disorders were a factor in his committing the offenses. Accordingly, the trial court did not disregard the therapist's assessment based solely on the "absence of evidence" showing defendant was afflicted by a mental disorder at the time of the offense. (*Lacour v. Superior Court* (2025) 110 Cal.App.5th 391, 404; *Gomez v. Superior Court* (2025) 113 Cal.App.5th 671, 688-689.)

Having determined the trial court did not abuse its discretion in denying defendant's motion on the ground of ineligibility, we need not address the People's contention that defendant was not suitable for mental health diversion.

## II.   Custody Credits

The trial court awarded defendant 278 days of actual custody credit and 278 days of conduct credit, for a total of 556 days. However, defendant was arrested on February 21, 2024 and sentenced on November 25, 2024. The court therefore should have awarded him 279 days of actual custody credit, and 278 days of conduct credit, for a total of 557 days of presentence custody credit. (*People v. Johnson* (2015) 234 Cal.App.4th 1432, 1457; *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48.) The minute order and abstract of judgment both credit defendant 279 actual days and 278 conduct days but nevertheless record 556 as the total number of days. Accordingly, we will order the judgment modified to reflect the correct number of total credit days.

9

**DISPOSITION**

The judgment is modified to award defendant 557 days of presentence custody credit. As modified, the judgment is affirmed. The trial court is directed to amend the minutes and abstract of judgment to reflect the corrected presentence custody credit and forward a certified copy of the abstract to the Department of Corrections and Rehabilitation.

/s/ _____
MESIWALA, J.

We concur:

/s/ _____
HULL, ACTING P. J.

/s/ _____
KRAUSE, J.

10